# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALY AHMED FAKHRY,

　　　　　　　　　　*Petitioner,*

v.

MICHAEL B. MUKASEY,* Attorney General,

　　　　　　　　　　*Respondent.*

No. 04-73671

Agency No.
A78-737-790

ALY AHMED FAKHRY,

　　　　　　　　　　*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney General,

　　　　　　　　　　*Respondent.*

No. 04-76147

Agency No.
A78-737-790

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 6, 2007—Portland, Oregon

Filed May 5, 2008

Before: Edward Leavy, Raymond C. Fisher, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

## COUNSEL

Philip James Smith, Hecht & Smith, LLP, Portland, Oregon, for the petitioner.

Karin J. Immergut, United States Attorney for the District of Oregon, and William E. Fitzgerald and Kelly A. Zusman,

Assistant United States Attorneys, Portland, Oregon, for the respondent.

## OPINION

BERZON, Circuit Judge:

Aly Ahmed Fakhry, a native and citizen of Senegal, came to the United States on a temporary visa in 1999. Over three years later he applied for asylum based on his membership in a Senegalese political organization. The Immigration Judge ("IJ") denied his application, finding that he failed to qualify for the "changed circumstances" exception to the one-year bar on filing asylum claims, or, in the alternative, that he could reasonably relocate to another part of the country. We conclude that there was error in each of the grounds for denying Fakhry's application for asylum and remand for further proceedings. We affirm the denial of Fakhry's application for withholding of removal and his subsequent motion to reopen.

## BACKGROUND

### I.

Fakhry is from a region in the south of Senegal called Casamance. For decades, Casamance has been torn by fighting between the government and an armed opposition group seeking independence for Casamance, the *Mouvement des forces démocratiques de Casamance* ("MFDC"). Human rights abuses committed by the Senegalese government in this conflict are well-documented. In 1998, for example, it was reported to be "regular practice for the Senegalese army to torture and execute people in Casamance." *See* Amnesty International, *Senegal: Climate of Terror in Casamance*, at 1 (1998) (internal quotations omitted).[1] Conditions improved

---

[1] All cited reports are in the certified administrative record.

somewhat after a change in government in 2000, but problems in Casamance continue, including "extrajudicial killings" by government forces. *See* United States Department of State, *Senegal, Country Reports on Human Rights Practices — 2002* (2003); *see also Ndom v. Ashcroft*, 384 F.3d 743, 747-48 (9th Cir. 2004) (describing history of the MFDC and human rights abuses committed by the Senegalese government).

Fakhry formally joined the MFDC in 1992 and has a membership card indicating this affiliation.[2] In 1997, Fakhry's brother was severely beaten and detained by the army for a week because they suspected him of being a member of the MFDC. After this incident, Fakhry moved his family to Senegal's capital, Dakar, which is located outside of Casamance. In Dakar, Fakhry kept his membership in the MFDC a secret.

In 1999, Fakhry, his wife, and his newborn child returned to Casamance to visit his mother. During the visit, government soldiers entered and began to search his mother's house. Fakhry asked them to be less disruptive, so as to not disturb his sick mother and newborn child. In response, the soldiers severely beat him, leaving him unconscious. After this incident, Fakhry made arrangements to leave the country.

In May 1999, Fakhry came to the United States on a six-month visitor's visa, intending to apply for asylum. An uncle living in the United States, after consulting with a lawyer, advised Fakhry to wait for a supposedly imminent law that would permit him to remain in the United States. As a result, Fakhry did not apply for asylum.

In the following years, three pertinent events took place. First, in early 2001, Fakhry's brother told him that the Senegalese army had raided MFDC headquarters and captured the

---

[2]Although the MFDC has also committed human rights abuses, there is no evidence in the record that Fakhry participated in the persecution of others.

group's records and membership files. Second, in March 2001, the Senegalese government and the MFDC signed a peace agreement. Third, in the spring of 2002, the peace agreement collapsed and full-fledged fighting resumed.

While Fakhry has been in the United States, his wife and children have lived in Dakar without incident. His father and the brother beaten in 1997 as a suspected MFDC member also live in Dakar and have not suffered persecution there.

## II.

In October 2002, the Immigration and Naturalization Service — now the Department of Homeland Security ("DHS")[3] — commenced removal proceedings against Fakhry for overstaying his visa. Fakhry conceded removability but applied for asylum and withholding of removal.[4] He was the sole witness at the hearing, where he testified to the background facts outlined above.[5]

Fakhry also testified that he was afraid to return to Senegal. He explained two reasons for his fear that the government would target him upon his return. First, his identification papers show he is from Casamance, and he has lived abroad for some years. The MFDC regularly raises funds from members in other countries, so Fakhry fears the government will suspect that he has been fundraising abroad for the MFDC. Second, once the government suspects his MFDC affiliation, it could confirm that suspicion by checking the membership

---

[3]The Immigration and Naturalization Service was reorganized and reconstituted as DHS in 2003. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205. For convenience, we refer to the agency as DHS.

[4]Fakhry also applied for relief under the Convention Against Torture. He does not now appeal the IJ's denial of this relief.

[5]Because the IJ found Fakhry to be credible, we accept his testimony as true. *Vukmirovic v. Ashcroft*, 362 F.3d 1247, 1251 (9th Cir. 2004).

files it took in the raid on MFDC headquarters. The government thus has reason to suspect and the ability to confirm Fakhry's membership in the MFDC.

DHS argued that Fakhry was not eligible for asylum because he failed to apply within one year of arriving in the United States and did not establish either of the two exceptions to the one-year filing bar: "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing." 8 U.S.C. § 1158(a)(2)(B), (D). In the alternative, DHS argued that Fakhry failed to establish eligibility for asylum based upon either past persecution or a well-founded fear of persecution. *See id.* § 1101(a)(42). It also contested his application for withholding of removal.

The IJ found, first, that Fakhry did not qualify for the changed circumstances exception to the one-year deadline for filing an asylum application.[6] The IJ noted that if Fakhry had come to the United States "for a different purpose, for a particular kind of business or other kind of venture or particular kind of trip and if because of those [sic] changed circumstances after that, triggered his application for asylum, then that's what the law is for." In Fakhry's case, in contrast,

> the Court didn't hear anything other than his constant interest in remaining in the United States, not being returned to Senegal and being afraid to return from day one. Therefore, while certainly the country conditions have been changing, there was never such a complete change, even with the new government, that at least affected him so that he decided to withdraw interest or make attempts to possibly go back and then stop again because something new happened . . . .

---

[6]Fakhry does not challenge the IJ's adverse ruling on the "extraordinary circumstances" exception.

In the alternative, the IJ held that Fakhry did not qualify on the merits for asylum. The IJ found that the 1999 incident in which soldiers beat Fakhry at his mother's house in Casamance did not constitute past persecution, because there was no indication that the soldiers were aware of his MFDC membership or that he was beaten for his participation in the MFDC. The IJ declined to decide whether or not Fakhry had established a well-founded fear of persecution, concluding that even if he had, he was reasonably able to relocate to Dakar and avoid persecution there. The IJ also denied Fakhry's application for withholding of removal because he failed to establish that it was more likely than not he would be persecuted or, in the alternative, because he could reasonably relocate to Dakar.

Fakhry appealed to the Board of Immigration Appeals ("BIA"), which, in a single-member order, dismissed his appeal "based upon and for the reasons set forth" in the IJ's decision. Fakhry subsequently moved to reopen his proceedings; the BIA denied this motion. Fakhry now challenges the denial of his asylum and withholding applications and the denial of his motion to reopen.

## ANALYSIS

We have jurisdiction pursuant to 8 U.S.C. § 1252. Section 1252(a)(2)(D) grants us jurisdiction to review "the application of statutes and regulations to undisputed historical facts." *Ramadan v. Gonzales*, 479 F.3d 646, 654 (9th Cir. 2007) (footnote omitted). The questions we address in this opinion fit this rubric.

"Where, as here, the BIA has reviewed the IJ's decision and incorporated . . . it as its own, we treat . . . the IJ's decision as the BIA's." *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002). We review legal questions de novo, *see id.*, and factual findings regarding eligibility for asylum for

substantial evidence. *See* 8 U.S.C. § 1252(b)(4)(B); *Morales v. Gonzales*, 478 F.3d 972, 977 (9th Cir. 2007).

## I.

## A.

**[1]** Applications for asylum must be filed within one year of an alien's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Failure to file within one year will not bar an application, however, where the alien demonstrates "the existence of changed circumstances which materially affect the applicant's eligibility for asylum." *Id.* § 1158(a)(2)(D).

DHS's regulations provide a nonexhaustive list of examples:

(A)  Changes in conditions in the applicant's country of nationality or, if the applicant is stateless, country of last habitual residence;

(B)  Changes in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including changes in applicable U.S. law and activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk; or

(C)  In the case of an alien who had previously been included as a dependent in another alien's pending asylum application, the loss of the spousal or parent-child relationship to the principal applicant through marriage, divorce, death, or attainment of age 21.

8 C.F.R. § 208.4(a)(4)(i). The regulations further provide that "[t]he applicant shall file an asylum application within a rea-

sonable period given those 'changed circumstances.' " *Id.*
§ 208.4(a)(4)(ii).

**1.**

The IJ noted that "certainly the country conditions have
been changing," but held the exception did not apply because
of Fakhry's "constant interest in remaining in the United
States, not being returned to Senegal and being afraid to
return from day one." Fakhry argues that the IJ applied the
wrong legal standard, because an alien's subjective intent to
apply for asylum is not relevant to the changed circumstances
analysis.

**[2]** We agree that the timing of an alien's intent to apply for
asylum has no role in the changed circumstances analysis.
"Changed circumstances" are those which "materially affect
the applicant's *eligibility for asylum*." 8 U.S.C.
§ 1158(a)(2)(D) (emphasis added); *see* 8 C.F.R.
§ 208.4(a)(4)(i). Eligibility for asylum, in turn, is established
by demonstrating " 'persecution or a well-founded fear of per-
secution on account of race, religion, nationality, membership
in a particular social group, or political opinion.' " *Al-Harbi
v. INS*, 242 F.3d 882, 888 (9th Cir. 2001) (quoting 8 U.S.C.
§ 1101(a)(42)(A)). The applicant's subjective state of mind
does play a role in establishing eligibility for asylum because
a well-founded fear of persecution must be "both 'subjec-
tively genuine' and 'objectively reasonable.' " *Id.* (quoting
*Velarde v. INS*, 140 F.3d 1305, 1309 (9th Cir. 1998)); *see* 8
C.F.R. § 208.13(b)(2)(i).[7] A subjective fear of persecution

---

[7]8 C.F.R. § 208.13(b)(2)(i) provides:

   (i)   An applicant has a well-founded fear of persecution if:

      (A)   The applicant has a fear of persecution in his or her
           country of nationality or, if stateless, in his or her
           country of last habitual residence, on account of race,
           religion, nationality, membership in a particular social
           group, or political opinion;

may often correlate with a subjective intent to apply for asylum, as an alien who fears persecution will often also intend to apply for asylum. But this potential overlap does not change the fact that the two subjective states of mind are distinct, or the fact that subjective fear of persecution alone does not suffice to establish a well-founded fear of persecution — the fear must also be objectively reasonable. Thus, there can be "changed circumstances which materially affect the applicant's eligibility for asylum" even if the alien always meant to apply for asylum and always feared persecution; a sudden "Eureka!" state of mind is not necessary. In short, the subjective intent standard applied by the IJ is contrary to the statute and regulations, and we have found no authority suggesting otherwise.[8]

Moreover, a subjective intent standard would contradict a likely purpose of the exception: to excuse late applications when an alien previously had a weak or nonexistent case for asylum. Take, for example, the case of an alien who came to the United States wanting to apply for asylum and fearing per-

---

    (B)   There is a reasonable possibility of suffering such persecution if he or she were to return to that country; and

    (C)   He or she is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear.

[8]None of the published BIA opinions applying the changed circumstances exception rely on the alien's subjective intent to apply for asylum or on the timing of the alien's subjective fear of persecution. *See Matter of A-T-*, 24 I. & N. Dec. 296, 301-02 (BIA 2007) (rejecting as a changed circumstance the fact that the asylum applicant's parents arranged for her to marry her first cousin, a marriage she did not wish to enter, because her asylum application was not filed within a reasonable time after she became aware of this circumstance); *Matter of A-M-*, 23 I. & N. Dec. 737, 738-39 (BIA 2005) (rejecting nightclub bombing in Bali as a changed circumstance in part because, as the bombing victims were mostly foreign tourists, the circumstance did not materially affect the alien's asylum application based on his Chinese ethnicity and Christian faith).

secution should she return, but felt that she would not qualify on the objective reasonableness grounds. Not wanting to file an application that would be denied, she did not file. After her second year in the United States, changed circumstances in her country of origin made her application much stronger, prompting her late application. Why should she be penalized for declining to clog the immigration courts with a meritless application? The statute's description of "changed circumstances which materially affect the applicant's eligibility for asylum" reasonably includes this alien's situation.[9]

[3] We conclude that there is no support in the statute, case law, or purposes of the statute for the IJ's holding that Fakhry did not qualify for the changed circumstances exception solely because his subjective intent to apply for asylum — and subjective fear — existed before the expiration of the one-year asylum application period. *See Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1014-15 (9th Cir. 2006) (unpublished, single-member BIA decision warrants only the deference due in light of its thoroughness, validity and persuasiveness, pursuant to *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). The IJ erred in so holding.

## 2.

Fakhry argues that he has demonstrated changed circumstances materially affecting his asylum application: In early 2001, Fakhry learned from his brother that the Senegalese government had captured MFDC membership records, and in March 2001 a peace agreement was signed between the Sene-

---

[9]At oral argument, counsel for the government essentially so conceded:

The Court: If there is a changed country condition — if the IJ looks at it or if we look at it objectively and we think the IJ got it wrong — then it shouldn't matter whether or not he had a subjective intent to file for asylum from Day One.

AUSA: On that I agree, absolutely.

galese government and the MFDC.[10] Then, in the spring of 2002, the peace agreement broke down and fighting resumed. This resumption of fighting, in conjunction with Fakhry's reasonable belief that the Senegalese government had record evidence of his membership in the MFDC, could constitute changed circumstances materially affecting Fakhry's eligibility for asylum. For the first time since his arrival in the United States, Fakhry had an objectively reasonable basis to believe that the Senegalese government both could identify him as an MFDC member and would persecute him on this ground.

**[4]** The IJ, while finding Fakhry ineligible for the "changed circumstances" exception because of his continuous subjective intent to apply for asylum, also recognized that "country conditions have been changing." But the IJ did not specifically find that Fakhry would have qualified for the "changed circumstances" exception but for his subjective state of mind. Because the agency applied the wrong legal standard and has not considered the issue using the correct standard, we remand for a determination of whether Fakhry demonstrated changed circumstances and, if so, whether he applied for asylum within the requisite "reasonable period." *See Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006) ("[W]here the BIA applies the wrong legal standard to an applicant's claim, the appropriate relief from this court is remand for reconsideration under the correct standard . . . ."); *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case.").

## B.

---

[10]The sequence of these events is unclear, but the record suggests that the peace agreement took place shortly after Fakhry learned about the membership records.

The IJ also denied Fakhry's asylum application on the merits, finding that Fakhry failed to establish past persecution, and that even if he established a well-founded fear of future persecution — a question the IJ declined to decide — he was reasonably able to relocate to Dakar and avoid persecution there.

**[5]** An alien can establish eligibility for asylum by proving past persecution or a well-founded fear of persecution in his home country on account of a protected ground. 8 C.F.R. § 208.13(a), (b)(1)-(2); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). A well-founded fear of persecution ordinarily cannot be established, however, if the applicant "could avoid persecution by relocating to another part of the applicant's country . . . , if under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 208.13(b)(2)(ii). But where "the persecutor is a government or is government-sponsored, . . . it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate." *Id.* § 208.13(b)(3)(ii); *see also Harpinder Singh v. Ilchert*, 63 F.3d 1501, 1511 (9th Cir. 1995) ("This court presumes that in a case of persecution by a governmental body such as a national police force, the government has the ability to persecute the applicant throughout the country.").

**[6]** Fakhry testified he feared persecution at the hands of the Senegalese government. He thus gains the benefit of the presumption that the threat of persecution exists nationwide and that relocation is therefore unreasonable. *See Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003). The IJ, however, failed to apply this presumption. In his discussion of Fakhry's ability to relocate, he never referred to the presumption or placed any significance on the fact that the persecutor is the government. Further, in weighing the evidence, the IJ appeared to place the burden on Fakhry to disprove the rea-

sonableness of internal relocation: "I am satisfied that it's not unreasonable to expect the respondent could go to Dakar and remain free of any indicated problems that he has." The IJ's failure to apply the presumption was error.

**[7]** Whether the government rebutted this presumption by a preponderance of the evidence and, if so, whether Fakhry established a well-founded fear of persecution, are questions for the agency on remand. *See INS v. Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam).

## II.

The IJ denied Fakhry's application for withholding of removal because Fakhry could reasonably relocate to another part of the country to avoid persecution or, in the alternative, because Fakhry failed to establish that it was more likely than not that he would be persecuted if he returned to Senegal. As discussed above, the IJ's relocation analysis was in error because he failed to apply the presumption against relocation where the government is the persecutor.

**[8]** With regard to withholding, however, the IJ did make a finding that Fakhry failed to establish the requisite fear of persecution.[11] We affirm the denial of withholding on this alternative ground, because the sum of the evidence does not compel a finding that it is more likely than not that Fakhry will be persecuted upon his return to Senegal. *See Elias-Zacarias*, 502 U.S. at 481 & n.1 ("To reverse the BIA finding

---

[11]The burden of proof for the fear of persecution is different for asylum and withholding applications: For purposes of asylum, "even a ten percent chance of persecution may establish a well-founded fear." *Al-Harbi*, 242 F.3d at 888. For withholding, the alien must establish that "it would be 'more likely than not' that the feared persecution would occur." *Lata v. INS*, 204 F.3d 1241, 1244 (9th Cir. 2000) (quoting *INS v. Stevic*, 467 U.S. 407, 424 (1984)).

we must find that the evidence not only *supports* that conclusion, but *compels* it . . . .").**[12]**

## III.

**[9]** Fakhry argues that the BIA abused its discretion by failing to base its denial of his motion to reopen on one of the permissible grounds for denial. The BIA determined that Fakhry's new evidence did not establish a prima facie case for relief. *See Fernandez v. Gonzales*, 439 F.3d 592, 599 (9th Cir. 2006) (failure to establish a prima facie case for relief is grounds to deny a motion to reopen). The BIA's analysis was not erroneous.**[13]**

## CONCLUSION

The IJ erred in each alternative ground for denying Fakhry's asylum claim. We remand for consideration under the correct legal standard for the changed circumstances exception to the one-year filing bar and, if the agency reaches the merits of Fakhry's asylum application, for the employment of the presumption against the availability of relocation when the government is the persecutor. We affirm the denials

---

**[12]**Fakhry also argues that he was denied due process because the IJ failed sufficiently to review the record before rendering his decision. Although the IJ initially stated that he had not fully reviewed all of the documents prior to Fakhry's hearing, he went off the record to review them and subsequently stated in his decision that he had reviewed the complete record. As there is no indication that the IJ's review was not sufficiently thorough, Fakhry fails to demonstrate that his due process rights were violated. *See Larita-Martinez v. INS*, 220 F.3d 1092, 1095-96 (9th Cir. 2000) ("[I]t is so expected that a court would review all relevant materials in the record that reviewing courts have presumed it. . . . [A]n alien attempting to establish [otherwise] . . . must overcome the presumption that it did review the evidence.") (internal citations omitted).

**[13]**Although Fakhry also notes that the BIA's decision states that he moved to Dakar in 1990, when in fact he moved there in 1997, the BIA's decision did not rely on this fact. A factual error with no apparent significance does not render the decision an abuse of discretion.

of Fakhry's application for withholding of removal and his motion to reopen.

Petition for review GRANTED in part, DENIED in part, and REMANDED.