UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RANJIT SINGH,

       Petitioner,

    v.

MERRICK B. GARLAND, Attorney
General,

       Respondent.

No. 22-577

Agency No.
A208-885-319

ORDER

Before: BEA, CHRISTEN, and JOHNSTONE, Circuit Judges.

Respondent's motion to amend (Dkt. No. 40) is GRANTED. The
memorandum disposition filed on February 1, 2024, is amended as follows: on
page 5, line 3, delete footnote 2. The Clerk shall file the amended memorandum
disposition concurrently with this order.

**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 26 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RANJIT SINGH,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 22-577

Agency No.
A208-885-319

AMENDED MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 16, 2023
San Francisco, California

Before: BEA, CHRISTEN, and JOHNSTONE, Circuit Judges.
Partial Dissent and Partial Concurrence by Judge BEA.

Ranjit Singh, a native and citizen of India, petitions for review of the Board

of Immigration Appeals' (BIA) order denying his applications for asylum and

withholding of removal. We "review legal conclusions *de novo*" and "review for

substantial evidence factual findings underlying the BIA's determination that a

petitioner is not eligible for asylum [or] withholding of removal." *Plancarte*

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

*Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022) (citation omitted). When, as here, the BIA adopts and affirms the Immigration Judge's (IJ) decision by citing *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994), and offers additional reasoning, the court reviews both decisions. *Husyev v. Mukasey*, 528 F.3d 1172, 1177 (9th Cir. 2008). We assume the parties' familiarity with the facts and recite them only as necessary. We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we grant the petition in part, deny it in part, and remand to the BIA.

The IJ concluded that Singh suffered past persecution on account of his membership in a cognizable particular social group—the family of his father, Balkar Singh—in the state of Punjab, India. The IJ found that the Government carried its burden of proof and rebutted the presumption of future persecution by showing that Singh could safely and reasonably relocate to another part of Punjab or outside Punjab where he would not be persecuted on account of being a member of his father's family. The BIA adopted and affirmed the IJ's determination that the Government met its burden of proof. It also expressly concluded that Singh was not entitled to a presumption that relocation would be unreasonable because his persecutors were private actors, rather than the government.

Because the IJ found that Singh had suffered past persecution, the Government bore the burden of establishing that Singh could safely and reasonably relocate within India to avoid future persecution by a preponderance of the

evidence. *See* 8 C.F.R. § 1208.13(b)(1)(ii). The IJ began her analysis by nominally placing the burden of proof on the Government. However, the bulk of the IJ's three-paragraph discussion of the evidence regarding safe relocation does not appear to assign the burden of proof to either party, and some parts of the IJ's discussion appear to fault Singh for failing to produce evidence showing that relocation would not be safe. For example, the IJ found that Singh's evidence had not "establish[ed] that [his persecutors] could use the tenant verification system or Aadhaar card information to learn of [his] whereabouts upon his relocation in India." It is therefore unclear whether the agency impermissibly shifted the burden of proof to Singh. "[T]he presence of evidence favorable to [Singh] is not what is determinative here . . . . If the government's . . . evidence fails to rebut the presumption that relocation is [unsafe], the presumption must stand." *Afriyie v. Holder*, 613 F.3d 924, 935–36 (9th Cir. 2010) (emphasis omitted) (quoting *Navas v. INS*, 217 F.3d 646, 662 (9th Cir. 2000)), *overruled on other grounds by Bringas-Rodriguez v. Sessions*, 850 F.3d 1051 (9th Cir. 2017) (en banc).

"Because of the IJ's lack of clarity" as to which party was required to show that Singh could or could not safely relocate, we remand Singh's asylum claim based on his membership in the family of Balkar Singh to the agency "to ensure that it evaluates the relocation issue in accord with the proper burden of proof." *Id.* at 935; *see also Singh v. Whitaker*, 914 F.3d 654, 660 (9th Cir. 2019) (recognizing

that the Government usually must make "a more comprehensive showing" to meet its burden of proof when it does not identify a specific region of the country to which the applicant could safely relocate).[1]

We also remand Singh's asylum claim because, under the regulations applicable at the time his asylum application was considered, he was entitled to a presumption that internal relocation would be unreasonable even though his persecutors were private actors. *See* 8 C.F.R. § 1208.13(b)(3)(ii) (2013) ("In cases in which the persecutor is a government or is government-sponsored, *or the applicant has established persecution in the past*, it shall be presumed that internal relocation would not be reasonable . . . ." (emphasis added)); *see also Fakhry v. Mukasey*, 524 F.3d 1057, 1065 (9th Cir. 2008) (citing *INS v. Ventura*, 537 U.S. 12,

---

[1]     Our dissenting colleague argues that *Afriyie* is distinguishable because "there was no suggestion in *Afriyie* that the IJ cited or relied on affirmative evidence presented by the Government demonstrating that relocation would be safe or reasonable." To the contrary, in *Afriyie* the Government provided documentary evidence to show that the petitioner could safely and reasonably relocate, including two country conditions reports on which the BIA expressly relied in affirming the IJ's relocation finding. *See* 612 F.3d at 929–30 (explaining that "[t]he government introduced two official reports to support its contention that Afriyie could relocate in Ghana" and that the BIA relied on those reports to conclude that relocation would be safe). Despite the Government's affirmative evidence, the *Afriyie* court concluded that the agency was unclear as to which party bore the burden of proof. *Id.* at 935. In Singh's case, the Government relies on the fact that Singh's sister lives unharmed in another part of Punjab to establish that Singh can safely relocate. The agency may certainly consider the evidence in the record concerning Singh's married sister, including whether Singh's persecutors were aware of her, in assessing whether Singh can safely relocate, but *Afriyie* instructs that it must do so within the proper burden-of-proof framework.

16–17 (2002) (per curiam)) (remanding to the BIA because the agency "failed to apply [a] presumption" to which the petitioner was entitled). On remand the BIA will have an opportunity to apply this presumption in the first instance.

Finally, we remand Singh's withholding of removal claim based on his membership in the family of Balkar Singh because the BIA did not separately address it. *See Singh*, 914 F.3d at 661 n.2. On remand the BIA will have the opportunity to do so.

We deem unexhausted Singh's argument that he will face persecution on account of his political opinion. *See Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023). Singh's brief to the BIA did not challenge the IJ's finding that Singh had not faced persecution on account of his political opinion, and the BIA concluded that Singh had waived any challenge to the IJ's finding. The Government properly raises Singh's failure to exhaust his administrative remedies under 8 U.S.C. § 1252(d)(1). We therefore deny the petition with respect to Singh's claims for asylum and withholding of removal on account of his political opinion.

**Petition GRANTED in part, DENIED in part, and REMANDED.**



*Singh v. Garland*, No. 22-577
BEA, Circuit Judge, dissenting in-part and concurring in-part:

It is clear from the IJ's decision that she properly assigned to the Government the burden of proving that Singh could safely relocate to another part of India. And the plain text of 8 C.F.R. § 1208.13(b)(3)(ii) (2013) did not entitle Singh to a standalone presumption against reasonable relocation because, under the plain language of that rule, the presumption does not come into play if the Government offers evidence establishing that relocation *would be* reasonable, which is what happened here. I therefore disagree with the majority's two bases for granting Singh's petition and would deny it entirely.[1]

## A.

There is no "lack of clarity" in the IJ's decision as to upon "which party" the IJ placed the burden of proving safe relocation. The IJ "began her analysis by . . . placing th[at] burden of proof *on the Government*." The majority concedes this but concludes that it was not enough: not only did the "beg[inning] of her analysis" have to cite the correct burden of proof, "the bulk" of the IJ's "three-paragraph" safe

---

[1] Because the agency's relocation analysis was without error, remanding for the BIA to reexamine Singh's withholding of removal claim based on his relationship with his father is unnecessary. *See Singh v. Whitaker*, 914 F.3d 654, 661 n.2 (9th Cir. 2019). I therefore dissent from that ground for granting Singh's petition as well. I otherwise agree with the majority that Singh failed to exhaust his argument that he will face persecution on account of his political opinion.

1

relocation analysis needed to do so as well. When have we ever required the agency to parrot the correct legal standard throughout its decision? Surely reciting the correct rule of law once is enough.

The IJ not only correctly identified the Government as the party who bore the burden of proving safe relocation; she explicitly relied on the Government's affirmative evidence to conclude that it met its burden of proof on this issue—namely, Singh's admission on cross-examination that his sister, who lived "far away" in another part of the Punjab, had never been threatened, attacked, or even approached by Badal party members about her and Singh's father joining the Badal party. My colleagues ignore this part of the IJ's analysis entirely and they do not acknowledge that the IJ expressly concluded from "[t]his evidence . . . that [Singh] could . . . live safely in another part of India, where he would not face harm from Badal Party workers."

The majority suspects that the IJ impermissibly required Singh to prove relocation was unsafe because she "appear[ed] to fault Singh for failing to produce evidence showing that relocation would not be safe." Respectfully, that is not what happened below. The IJ never "fault[ed]" Singh for "*failing* to produce evidence that relocation would . . . be [un]safe." The IJ acknowledged that Singh *produced* "extensive" evidence on this issue. She simply found that evidence unpersuasive:

> [Singh] submitted extensive documentation about the Indian tenant verification system; however, this evidence does not establish that

2

Badal Party workers could use the tenant verification system or Aadhaar card information to learn of Singh's whereabouts upon his relocation in India . . . [T]here is no evidence that such tenant information is disseminated to the public or made available to other organizations outside of the police. There is also no indication that the Badal Party or any other political party is privy to tenant verification information. Therefore, . . . even if Singh relocated and was subject to the tenant verification system, it is improbable that the Badal Party would learn of his whereabouts and subsequently use this information to target him.

It was not error for the IJ to consider this evidence that Singh volunteered. *See Afriyie v. Holder*, 613 F.3d 924, 935 (9th Cir. 2010) ("The BIA may look to any evidence introduced by Afriyie that bears on reasonable[] [relocation]."). In fact, the IJ would have abused her discretion had she *not* weighed this evidence because IJs "are not free to ignore arguments [or evidence] raised by a petitioner." *Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005); *see also, e.g., Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011) ("[W]here there is any indication that the [agency] did not consider all of the evidence before it . . . the decision cannot stand."). But with the majority's holding, the IJ on remand must now choose between rejecting this same evidence again or ignoring it at the risk of committing separate error. I cannot support that outcome.

It seems the majority's only source of inspiration for remanding on this ground is our decision in *Afriyie v. Holder*.[2] But in that case there were multiple, glaring

_____

[2] My colleagues also cite *Singh v. Whitaker* for support—namely, its remark that "a more generally defined area [proposed for safe relocation] will likely require a more

3

problems with *both* the BIA's and IJ's relocation analyses that required remand—problems simply absent here. The BIA in *Afriyie* "did not state who had the burden of proof with respect to relocation." *Afriyie*, 613 F.3d at 935. The BIA and IJ here did. The IJ in *Afriyie* blamed the asylum applicant for "offer[ing] *no* evidence that relocation . . . would *not be* reasonable" or safe. *Id.* (emphasis added). But rather than fault Singh for "offer[ing] no evidence" on the safe relocation question, the IJ here noted Singh's "extensive" evidence on this issue but ultimately found most of that evidence unpersuasive. Lastly, there was no suggestion in *Afriyie* that the IJ cited or relied on affirmative evidence presented by the Government demonstrating that relocation would be safe or reasonable. *Id*. at 934–35. The IJ avoided that mistake below by relying on Singh's cross-examination testimony. Simply put, the relocation analysis in *Afriyie* was flawed from start to finish, which is not the case here.

Because there is no ambiguity as to whether the IJ placed the burden on the Government to prove safe relocation—she did—I disagree with remanding on this ground.

**B.**

---

comprehensive showing of proof." 914 F.3d at 660. That statement plainly speaks to a different question: whether substantial evidence supports the IJ's finding that Singh could safely relocate. That is not at issue here because my colleagues never dispute whether substantial evidence supports the IJ's safe relocation finding.

4

The majority also concludes that 8 C.F.R. § 1208.13(b)(3)(ii) (2013) "entitled" Singh to a standalone presumption "that internal relocation would be unreasonable." But the remaining language of that rule says otherwise:

> In cases in which the . . . the applicant has established persecution in the past, it shall be presumed that internal relocation would not be reasonable, *unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate.*

*Id.* (emphasis added).

The majority conveniently omits § 1208.13(b)(3)(ii)'s dependent clause when invoking this rule. That clause is a proviso that plainly conditions when the asylum applicant is entitled to the presumption set forth in that rule.[3] Under its plain language, "it shall be presumed" that the applicant cannot reasonably relocate "unless" the Government "establishes . . . [that] it would be reasonable for the applicant to relocate."[4] § 1208.13(b)(3)(ii) (2013). Here, the BIA found that the

---

[3] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: Interpretation of Legal Texts* 154–55 (1st ed. 2012) (proviso canon) ("A proviso conditions the principal matter that it qualifies—almost always the matter immediately preceding."); *see also id.* at 140–41 (grammar canon) ("Words are to be given the meaning that proper grammar and usage would assign them.").

[4] Had § 1208.13(b)(3)(ii) (2013) meant for this dependent clause to describe the circumstances under which the presumption may be rebutted, the rule would have said so explicitly. *See, e.g.*, §§ 1208.13(b)(1), (b)(1)(i)(B) (2013) (providing that the presumption of "a well-founded fear of [future] persecution . . . *may be rebutted*" if the Government proves by a preponderance of the evidence that relocation would be reasonable) (emphasis added).

Government proved (and established through that proof) that Singh could reasonably relocate to another part of India. Adopting the IJ's reasoning, the agency relied on Singh's youth, good health, educational background, and prior farming experience to conclude that Singh could reasonably find gainful employment elsewhere in his home country.

I find no error with the BIA's analysis—neither does the majority, it seems. Singh's age, health, education, and employment prospects were all legally permissible factors for the agency to weigh in its reasonable relocation analysis. *See* § 1208.13(b)(3) (2013). The agency's reasonableness finding, in any case, was a factual one subject to substantial evidence review. *See Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021); *Mashiri v. Ashcroft*, 383 F.3d 1112, 1122 (9th Cir. 2004). Singh did not prove that the record compels the opposite finding that he could not reasonably relocate within India. 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

Because the IJ and BIA found that the Government proved reasonable relocation, Singh was not entitled to § 1208.13(b)(3)(ii)'s presumption under the plain text of that rule. I therefore dissent and would deny Singh's petition in full.