Opinion by Judge PAEZ; Dissent by Judge BYBEE.
OPINION
PAEZ, Circuit Judge:
In this petition for review of a decision by the Board of Immigration Appeals (BIA or Board), we address whether Petitioner Rigoberto Aguilar-Turcios’ conviction under Article 92 of the Uniform Code of Military Justice (UCMJ) qualifies as an “aggravated felony” under the modified categorical approach as explained by our recent en banc decision in United States v. Aguila-Montes de Oca, 655 F.3d 915 (9th Cir.2011). For the reasons discussed below, we conclude that Aguilar-Turcios’ Article 92 conviction is not an aggravated felony. We therefore grant the petition and remand this case to the BIA with instructions to vacate the removal order against him.
I.
Aguilar-Turcios is a citizen and native of Honduras who came to the United States as a legal permanent resident (LPR) in 1996. He married his wife, Vicenta, in June of 2000, shortly before he enlisted in the United States Marine Corps. They have at least one child together.
While in the Marine Corps, AguilarTurcios used a government computer to access pornographic Internet sites and to download pornographic images of female minors.
Court Martial — 2003
In 2003, Aguilar-Turcios pleaded guilty to and was convicted by special court-martial of violating UCMJ Article 92, which prohibits “violating] or fail[ing] to obey any lawful general order or regulation,” see 10 U.S.C. § 892(1), and UCMJ Article 134, which renders punishable, inter alia, “all conduct of a nature to bring discredit upon the armed forces,” see id. § 934.
In particular, Aguilar-Turcios pleaded guilty to violating UCMJ Article 92 as a result of his violation of Department of Defense (DOD) Directive 5500.7-R § 2-301(a), which provides that government computers “shall be for official use and authorized purposes only” and that such “authorized purposes” do not include “uses involving pornography.”
Aguilar-Turcios also pleaded guilty to and was convicted of bringing discredit upon the armed forces under UCMJ Article 134 by “wrongfully and knowingly possessing] visual depictions of minors engaging in sexually explicit conduct, which conduct was prejudicial to good order and discipline of the armed forces.”
The Military Judge (MJ) sentenced Aguilar-Turcios to ten months of confinement, a pay-grade reduction, and a bad-conduct discharge from the Marine Corps.
Removal Proceedings — 2005
In 2005, the federal government initiated removal proceedings against AguilarTurcios, charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having *1029 been convicted of an aggravated felony. In particular, the government alleged that Aguilar-Turcios’ convictions under UCMJ Articles 92 and 134 amounted to violations of 18 U.S.C. § 2252(a)(2)[1] and (a)(4),[2] both of which address conduct involving child pornography, and therefore qualified as aggravated felonies under 8 U.S.C. § 1101 (a) (43) (I) .[3]
Agency Decisions — 2006
The Immigration Judge (IJ) assigned to Aguilar-Turcios’ removal proceeding determined that neither the Article 92 nor the Article 134 violations categorically qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(I). Turning to the modified categorical approach, the IJ first held that Aguilar-Turcios’ Article 134 conviction was not an aggravated felony because Article 134 does not refer to child pornography and he was not persuaded that a charge of specific facts becomes an element of Article 134.[4] The IJ reached the opposite conclusion for Aguilar-Turcios’ Article 92 conviction, concluding that because “child pornography is a subset of pornography” and Aguilar-Turcios pleaded guilty to a charge containing the phrase “minor engaging in sexually explicit conduct” — the same language that appears in § 2252(a)(2) and (a)(4) — Aguilar-Turcios’ Article 92 conviction qualified as an aggravated felony.[5]
Aguilar-Turcios appealed the IJ’s Article 92 decision to the BIA. The government did not appeal the Article 134 ruling. The BIA affirmed the IJ’s decision in a per curiam order.
Initial Ninth Circuit Decision — 2009
Aguilar-Turcios petitioned for review of the BIA’s order, and we granted the petition and remanded the case to the BIA.[6] Aguilar-Turcios v. Holder, 582 F.3d 1093, 1094, 1098 (9th Cir.2009), withdrawn by 652 F.3d 1236 (9th Cir.2011). Like the IJ, we concluded that an Article 92 conviction for violating DOD Directive 5500.7-R § 2-301(a) is not categorically an aggravated felony.
We also held that the modified categorical approach did not apply at all to the analysis of whether Aguilar-Turcios’ Article 92 conviction was an aggravated felony. We applied the so-called “missing element rule” from Navarro-Lopez v. Gonzales, 503 F.3d 1063 (9th Cir.2007) (en banc), which limited the application of the modi *1030 fied categorical approach to statutes of conviction that are divisible into several crimes and barred application of the rule where a statute of conviction was “missing” an element of the generic crime. Concluding that both Article 92 and DOD Directive 5500.7-R § 2 — 301(a) were “missing” the element of “a visual depiction of a minor engaging in sexually explicit conduct,” we held that the modified categorical approach did not apply and that Aguilar-Turcios’ Article 92 conviction was therefore not an aggravated felony.
Judge Bybee dissented, calling into question the validity and wisdom of the Navarro-Lopez “missing element rule” and concluding that Aguilar-Turcios’ Article 92 conviction “necessarily shows that he committed the aggravated felony of knowing possession of child pornography” because “[t]he only pornography that Aguilar-Turcios admitted to accessing on his government computer during the plea colloquy were the six images of child pornography.”
Following publication of our original opinion in this case, the government filed a petition for rehearing en banc. The petition sought reconsideration of the Navarro-Lopez rule. Before we could rule on the government’s petition, a majority of the court’s active judges granted rehearing in another case, United States v. Aguila-Montes de Oca (‘Aguila-Montes ”), to consider the same question. We therefore held this case in abeyance pending the en banc opinion in Aguila-Montes.
Aguilar-Montes — 2011
Aguila-Montes overruled Navarro-Lopez ’s “missing element rule.” 655 F.3d at 916-17. As a result of the holding in Aguila-Montes, we withdrew our original opinion in this case and requested supplemental briefing from the parties on the question of what effect, if any, the AguilarMontes decision had on the outcome of Aguilar-Turcios’ case. Aguilar-Turcios, 652 F.3d at 1236. Having considered the supplemental briefing, we revisit the merits of this case.
II.
A.
We review de novo the BIA’s determinations of questions of law and legal conclusions. Tamang v. Holder, 598 F.3d 1083, 1088 (9th Cir.2010). “[Wjhether an offense constitutes an aggravated felony for which an alien is removable” is a question of law reviewed de novo. Carrillo-Jaime v. Holder, 572 F.3d 747, 750 (9th Cir.2009) (citing Cazarez-Gutierrez v. Ashcroft, 382 F.3d 905, 909 (9th Cir.2004)).
B.
Generally, we have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). We lack jurisdiction, however, to review final orders of removal against aliens who have committed certain criminal offenses, including aliens convicted of aggravated felonies. See id. § 1252(a)(2)(C). Of course, we have jurisdiction to determine our own jurisdiction. See Luu-Le v. INS, 224 F.3d 911, 914 (9th Cir.2000). Because our resolution of the merits of whether Aguilar-Turcios’ Article 92 conviction qualifies as an aggravated felony under federal law determines whether we have jurisdiction over his final order of removal, “the jurisdictional question and the merits collapse into one.” Id. (quoting Ye v. INS, 214 F.3d 1128, 1131 (9th Cir.2000) (internal quotation marks omitted)). If we determine that AguilarTurcios’ Article 92 conviction is not an aggravated felony, then we have jurisdiction over the final order of removal and must grant his petition; if we determine, however, that it is an aggravated felony, we lose our jurisdiction and the agency has *1031 the final word on Aguilar-Turcios’ removal.
III.
The question before us is whether Aguilar-Turcios’ UCMJ Article 92 conviction qualifies as an aggravated felony under the modified categorical approach.[7] Applying the modified categorical approach as explained in Aguilar-Montes, we hold that Aguilar-Turcios’ Article 92 conviction is not an aggravated felony because the facts on which his conviction “necessarily rested” do not satisfy the elements of either 18 U.S.C. § 2252(a)(2) or (a)(4).[8]
A. The Modified Categorical Approach
“The categorical and modified categorical frameworks, first outlined by the Supreme Court in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), establish the rules by which the government may use prior state convictions to enhance certain federal sentences and to remove certain aliens.”[9] Aguila-Montes, 655 F.3d at 917 (internal citation omitted). Importantly, the categorical and modified categorical approaches look only to the prior conviction, not to the facts outside the record of conviction. As the Supreme Court recently stated, the categorical approach requires that federal courts “look[] to the statute defining the crime of conviction, rather than to the specific facts underlying the crime.” Kawashima v. Holder, — U.S. -, 132 S.Ct. 1166, 1172, 182 L.Ed.2d 1 (2012); see also Carachuri-Rosendo v. Holder, — U.S. -, 130 S.Ct. 2577, 2589, 177 L.Ed.2d 68 (2010) (“[T]he defendant must also have been actually convicted of a crime that is itself punishable as a felony *1032 under federal law. The mere possibility that the defendant’s conduct, coupled with facts outside of the record of conviction, could have authorized a felony conviction under federal law is insufficient to satisfy the statutory command that a noncitizen be ‘convicted of a[n] aggravated felony’.... ”); Aguila-Montes, 655 F.3d at 928 (noting that courts are required to “focus on what the defendant was convicted of rather than the acts he committed”).
We have identified two important goals served by this limited inquiry into a past conviction: “First, it confines our inquiry to the fact of conviction and avoids the need to rummage through the ‘actual proof at trial’ to see ‘whether the defendant’s conduct constituted [a] generic [offense],’ ” preventing any possible “ ‘trial over trials.’ ” Aguila-Montes, 655 F.3d at 928 (quoting Taylor, 495 U.S. at 601, 110 S.Ct. 2143). “Second, by relying exclusively on the crime of conviction, we avoid situations where the government arguably could prove that the defendant actually committed a greater offense, one that would satisfy the generic crime, but would deprive the defendant of the benefit of his conviction for (or plea to) a lesser crime.” Id. at 928-29.
In applying the categorical approach, we compare the statute of conviction with the generic federal offense “to determine whether the latter encompasses the former.” Hernandez-Cruz v. Holder, 651 F.3d 1094, 1100 (9th Cir.2011). When the statute of conviction requires proof of the same elements as the generic federal offense, or is narrower than the generic federal offense, the state conviction is “categorically” the equivalent of the federal offense. See Taylor, 495 U.S. at 599, 110 S.Ct. 2143; Aguila-Montes, 655 F.3d at 920.
When the statute of conviction is broader than the generic federal offense, however, the modified categorical approach applies. The modified categorical approach requires that we “determine, in light of the facts in the judicially noticeable documents, (1) what facts the conviction necessarily rested on (that is, what facts the trier of fact was actually required to find); and (2) whether these facts satisfy the elements of the generic offense.” Aguila-Montes, 655 F.3d at 940. Judicially noticeable documents, also known as Shepard documents, are limited to:
(1) charging documents; (2) the terms of a written plea agreement; (3) transcripts of a plea colloquy between a judge and the defendant in which the factual basis for the plea was confirmed by the defendant; (4) jury instructions; (5) any explicit factual finding by the trial judge to which the defendant assented; and (6) some comparable judicial record of this information.[10]
Id. at 921. Limiting a court’s inquiry to such documents provides “the ‘certainty of a generic finding’ ” and “avoid[s] ‘evidentiary disputes.’ ” Id. at 937 (quoting Shepard v. United States, 544 U.S. 13, 23 n. 4, 24, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)).
We counseled in Aguila-Montes that we “must exercise caution” when determining upon what facts a prior conviction necessarily rested. Id. “It is not enough that an indictment merely allege a certain fact or that the defendant admit to a fact.” Id. Instead, to conclude that “the factfinder necessarily found the elements of the generic crime,” the modified categorical approach requires that “the defendant could not have been convicted of the offense of conviction unless the trier of *1033 fact found the facts that satisfy the elements of the generic crime.” Id.
We reject the dissent’s call to deviate from clearly established precedent and apply a less demanding modified categorical approach in immigration cases. Dissent at 1051-53. We have repeatedly applied the modified categorical approach as announced in Taylor, and Shepard’s limitations on judicially noticeable documents, in immigration cases where the government charges that a noncitizen is removable or ineligible for relief on the basis of a prior conviction. See, e.g., Perez-Mejia v. Holder, 663 F.3d 403, 410-13 (9th Cir.2011); Hernandez-Cruz, 651 F.3d at 1100; SYong v. Holder, 600 F.3d 1028, 1035 (9th Cir.2010). That precedent guides our analysis of the modified categorical approach in this case. Miller v. Gammie, 335 F.3d 889, 899-900 (9th Cir.2003).
Furthermore, we disagree with the dissent’s vague “flexible” approach. First, “the concern motivating the entire categorical/modified categorical exercise” is not, in fact, that we “be certain of the conduct that an alien committed before the alien is removed,” Dissent at 1053 (emphases added), but instead that we “focus on what the defendant was convicted of rather than the acts he committed.” Aguila-Montes, 655 F.3d at 928 (emphases added). This is not a minor distinction but the linchpin of the categorical and modified categorical approaches.[11]
Second, the categorical and modified categorical approaches apply in immigration proceedings in the same manner as they do in criminal sentencing proceedings, except in a very narrow class of cases where the statutory definition of the aggravated felony at issue “does not refer to generic crimes but refers to specific circumstances.” Nijhawan v. Holder, 557 U.S. 29, 129 S.Ct. 2294, 2300, 174 L.Ed.2d 22 (2009) (discussing 8 U.S.C. § 1101(a)(43)(M)(i)). In recent years, the Supreme Court has repeatedly applied the categorical and modified categorical approaches in immigration cases. Kawashima, 132 S.Ct. at 1172; Carachuri-Rosendo, 130 S.Ct. at 2586-87; Gonzales v. Duenas-Alvarez, 549 U.S. 183, 185-87, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007). Our sister circuits have also recognized that Congress’ use of the term “convicted” in the Immigration and Nationality Act requires application of this framework in immigration eases.[12] See Fajardo v. U.S. Att’y Gen., 659 F.3d 1303, 1307 (11th Cir. 2011) (“[C]ourts have consistently held that Congress’s use of the term ‘conviction,’ ... demonstrated its intent to require adjudicators to apply the categorical and modified categorical approach.”); Jean-Louis v. Att’y Gen., 582 F.3d 462, 473-74 (3d Cir.2009) (“[T]he BIA, prior attorneys general, and numerous courts of appeals have repeatedly held that the term ‘convicted’ forecloses individualized inquiry in an alien’s specific conduct and does not permit examination of extra-record evidence.”); Gertsenshteyn v. U.S. Dep’t of Justice, 544 F.3d 137, 145 (2d Cir.2008) (“[T]he INA premises removabil *1034 ity not on what an alien has done, or may have done, or is likely to do in the future (tempting as it may be to consider those factors), but on what he or she has been formally convicted of in a court of law.... One way to ensure proper focus on the conviction, we decided, was the method the Supreme Court applied in Taylor and Shepard.”). The Supreme Court’s recent decision in Nijhawan v. Holder does not change this analysis. The dissent’s citation to Nijhawan, Dissent at 1051-52, provides no support for a more “flexible” modified categorical approach here because the Court in Nijhawan specifically placed the statutory definition at issue in Aguilar-Tureios’ case, 8 U.S.C. § 1101 (a)(43)(I), among those offenses described in “language that must refer to [a] generic crime,” thus requiring application of the categorical or modified categorical approaches.[13] Id. Furthermore, the Court recognized the narrowness of its Nijhawan holding in Carachuri-Rosendo. 130 S.Ct. at 2586 n. 11 (“Our analysis was tailored to the ‘circumstance-specific’ language contained in that particular subsection of the aggravated felony definition.” (emphasis added)).
Third and finally, to the extent that the dissent agrees that the categorical and modified categorical approaches apply in immigration proceedings, and that the Shepard limitations on judicially noticeable documents also apply in the immigration context, we fail to see why a supposedly different and “flexible” approach is necessary. See Dissent at 1053 n. 12. If the sum total of the dissent’s “flexible” approach is an argument relating to the court’s ability to examine only certain portions of the Shepard documents in particular types of cases, see id., we address that issue infra. We see no need to turn that minor disagreement into an entirely new and less demanding modified categorical approach.
Thus, we proceed to apply the modified categorical approach as outlined in Aguila-Montes to Aguilar-Tureios’ case.
B. Applying the Modified Categorical Approach to Aguilar-Tureios’ Article 92 Conviction
Under Aguila-Montes, we first examine what facts were “necessary” to support Aguilar-Tureios’ Article 92 conviction. Concluding that Aguilar-Tureios’ admissions that (1) he used a government computer (2) to obtain access to pornographic Internet sites were the only facts necessary to support his Article 92 conviction, we then analyze whether those facts satisfy the elements of 18 U.S.C. § 2252(a)(2) or (a)(4). We conclude that they satisfy neither.[14]
*1035 Ag-uilar-Turcios pleaded guilty to and was convicted under UCMJ Article 92 of violating DOD Directive 5500.7-R § 2301(a), which provides that government computers “shall be for official use and authorized purposes only” and that such “authorized purposes” do not include “uses involving pornography.” [15] In particular, Aguilar-Turcios was charged as follows:
In that Lance Corporal Rigoberto Aguilarturcios [sic], U.S. Marine Corps, on active duty, did, ... on divers occasions, from on or about 1 November 2007, to on or about 18 July 2002, violate a lawful general regulation, to wit: Department of Defense Directive 5500.7-R, Section 2-301, Change 2, dated 25 March 1996, by wrongfully using a government computer, Fujitsu MPB3032AT (HD), serial number 03065335 (3.24 gb), to obtain access to pornographic internet sites.
(Emphases added.) In order to find an adequate factual basis that would support Aguilar-Turcios’ guilty plea to this charge, the MJ would only need to determine that Aguilar-Turcios (1) used a government computer (2) to obtain access to pornographic Internet sites. The MJ could not accept Aguilar-Turcios’ guilty plea and convict him under Article 92 unless he found that Aguilar-Turcios admitted those two facts; he was not, however, required to find anything further.
The judicially noticeable documents that we may examine in applying the modified categorical approach here consist of (1) the Charge Sheet; (2) the Memorandum of Pretrial Agreement; (3) the Stipulation of Fact, which was incorporated into the Memorandum of Pretrial Agreement and accepted by the MJ at the plea proceeding; [16] and (4) the transcript of the plea colloquy between the MJ and AguilarTurcios.[17]
As noted above, the Charge Sheet simply sets forth the basic facts and elements of the Article 92 charge. The Memorandum of Pretrial Agreement states only that Aguilar-Turcios agreed to plead guilty to the Article 92 charge and to *1036 violating DOD Directive 5500.7-R § 2-301, without mentioning any specific acts that he committed to violate it.
The Stipulation of Fact lists separately the facts underlying the Article 92 charge and the Article 134 charge, including the two specifications of the Article 134 charge. Each charge is noted in bold type, and the facts supporting that charge are presented directly below the charge itself. There is no overlap or cross-referencing in the stipulation between the facts supporting the Article 92 charge and those supporting the Article 134 charge. The paragraph in the Stipulation of Fact that supports the Article 92 charge parrots the Charge Sheet, stating that “LCpl Aguilarturcios [sic] used the government computer in his workspace ... to knowingly and wrongfully obtain access to pornographic internet sites.”
The plea colloquy between AguilarTurcios and the MJ reveals little more. (In the transcript, Aguilar-Turcios is listed as “ACC” for “accused”) After reading the elements of the Article 92 charge, and the specific charge from the charge sheet, the MJ asked Aguilar-Turcios:
MJ: Do you understand those elements? ACC: Yes, sir.
MJ: Are they accurate? When I say “are they accurate,” do they describe what you did?
ACC: Yes, sir.
Later in the court martial, the MJ and Aguilar-Turcios engaged in the following exchange:
MJ: And do you believe that downloading pornographic — or visiting, rather, pornographic internet sites violated that regulation?
ACC: Yes, sir.
[...]
MJ: And you realize these sites that you were going to were in fact pornographic internet sites?
ACC: Yes, sir.
MJ: Pardon me?
ACC: Yes, sir.
MJ: “Pornography” is defined as writings, pictures, etc., that are intended primarily to arouse sexual desire. Is that what the nature of these sites were? ACC: Yes, sir.
The MJ discussed each charge and its elements, and asked Aguilar-Turcios about the factual basis for each charge. Again, there was no overlap in the plea colloquy between the charges or the facts underlying them. At the end of the hearing, the MJ found that Aguilar-Turcios’ guilty pleas were supported by an adequate factual basis, but did not make specific factual findings about the conduct underlying each charge.
Although the limited information regarding the Article 92 charge in these documents reveals little about what Aguilar-Turcios actually did, it does establish both facts necessary to support his guilty plea to the Article 92 charge. First, Aguilar-Turcios admitted that he used a government computer, and second, he admitted that he obtained access to or visited pornographic Internet sites on that computer, as the MJ defined “pornography.” These admissions provided a sufficient factual basis for Aguilar-Turcios’ guilty plea and allowed the MJ to convict him of violating Article 92. See In re Ellis, 356 F.3d 1198, 1204-05 (9th Cir.2004) (finding that a guilty plea and a stipulation of fact provided “ample evidence” of guilt); see also United States v. Rivera-Ramirez, 715 F.2d 453, 457-58 (9th Cir.1983) (explaining that, although there was a limited factual record, there was an adequate factual basis for the defendant’s guilty plea because nothing in the record placed the accuracy of the plea in doubt).[18] As we discuss *1037 more fully infra, these factual admissions do not mention child pornography or minors and therefore do not satisfy the generic federal offense under 18 U.S.C. § 2252(a)(2) or (a)(4).
The dissent argues that we may look beyond Aguilar-Turcios’ Article 92 conviction to his Article 134 conviction in our application of the modified categorical approach.[19] Dissent at 1048-50. The dissent contends that if we do that, it is clear that Aguilar-Turcios only admitted to accessing child pornography. Dissent at 1045^46. We disagree. First, as we discuss below, our inquiry is limited to the conviction on which the government bases its charge that an alien is removable. Here, that is Aguilar-Turcios’ Article 92 conviction. Second, even if we could look to Aguilar-Turcios’ Article 134 conviction, none of the factual admissions that related to the Article 134 charge were “necessary” to support his Article 92 conviction. Finally, the different allegations in the Article 92 charge and the Article 134 charge mean that we cannot read the conduct alleged with respect to each charge as coextensive.
First, there is no legal precedent that allows a court, in its application of the modified categorical approach, to look beyond the record of conviction of the particular offense that the government alleges is an aggravated felony. We agree with the Eleventh Circuit’s conclusion that there is “no authority ... that permits the combining of two offenses to determine whether one or the other is an aggravated felony.” Jaggernauth v. Att’y Gen., 432 F.3d 1346, 1355 (11th Cir.2005). Furthermore, we decline to create such authority here. Aguilar-Turcios’ Article 92 and Article 134 convictions were for separate offenses that charged different conduct, and we are reluctant to conflate the two into one or allow one to seep into the other when applying the modified categorical approach.
The dissent argues that we may consider the factual basis supporting the Article 134 charge to conclude that Aguilar-Turcios was convicted under Article 92 of conduct proscribed by § 2252(a)(2) and/or (a)(4). Dissent at 1048-49. The government argues the same, reasoning that nothing in Taylor or Shepard prevents the court from looking at the facts underlying Aguilar-Turcios’ Article 134 conviction to conclude that his Article 92 conviction is an aggravated felony. We err on the side of caution and hold that under the modified categorical approach, we consider only those sections of the Shepard documents that pertain to the specific conviction or convictions that (1) the government charges render the alien removable or ineligible for relief and (2) are at issue on appeal. This holding is in line with the “cautio[us],” “circumscribed” analysis required by Aguila-Montes, and “ensure[s] that [the modified categorical approach] remains a narrow exception to *1038 the categorical approach.” Aguila-Montes, 655 F.3d at 937, 938.
In this case, each of Aguilar-Turcios’ convictions had a separate factual basis, as outlined in the Stipulation of Fact. This is not a case where multiple convictions rested on the same set of facts. Our inquiry here is therefore limited to those portions of the Shepard documents that pertain to Aguilar-Turcios’ Article 92 conviction. Id. at 940.
Second, even if we could look at the record as a whole, including the sections pertaining to Aguilar-Turcios’ Article 134 conviction, none of the facts supporting his Article 134 conviction were necessary to support his Article 92 conviction. The modified categorical approach limits our inquiry to the “facts the conviction necessarily rested on.” Id. at 940. We explained above that the only facts on which Aguilar-Turcios’ Article 92 conviction “necessarily rested” were (1) his use of a government computer (2) to obtain access to pornographic Internet sites. He admitted to both acts and pleaded guilty to the Article 92 charge at the beginning of his court-martial. The MJ carefully addressed each charge and its elements separately and in turn, not together. The factual bases for the two convictions were separate and distinct and none of the facts that related to the Article 134 conviction were necessary to support the Article 92 conviction.[20] Therefore, a more expansive review of the Shepard documents adds nothing to our analysis under the modified categorical approach.
Aguila-Montes also instructs that we apply the following test to determine “the facts necessarily found by the trier of fact in support of the conviction”: “If the defendant could not have been convicted of the offense of conviction unless the trier of fact found the facts that satisfy the elements of the generic crime, then the fact-finder necessarily found the elements of the generic crime.” 655 F.3d at 937. Here, to conclude that the MJ “necessarily found the elements” of 18 U.S.C. § 2252(a)(2) or (a)(4) would mean that unless the MJ found facts satisfying the elements of § 2252(a)(2) or (a)(4), AguilarTurcios could not have been convicted of violating UCMJ Article 92. Such factual findings or admissions were, however, entirely unnecessary to permit the MJ to find an adequate factual basis for AguilarTurcios’ plea to violating Article 92. Although we discuss the elements of § 2252(a)(2) and (a)(4) more fully infra, an example here will help illustrate this point. One of the elements of both § 2252(a)(2) and (a)(4) is that the offense conduct involves a minor. But the Article 92 charge says nothing about minors, and it was not *1039 necessary for the MJ to find that minors were involved in order to convict AguilarTurcios of using a government computer to obtain access to pornographic internet sites. As we discussed above, the MJ had the authority to accept Aguilar-Turcios’ guilty plea on the basis of his admissions to that conduct, without more. Therefore, the involvement of minors, one of the elements of § 2252(a)(2) and (a)(4) and a fact supporting Aguilar-Turcios’ Article 134 conviction, was not a “fact[] necessarily found by the trier of fact in support of the [Article 92] conviction.” Id.
Finally, the different allegations in the Article 92 charge and the Article 134 charge mean that we cannot construe the charged conduct as co-extensive, as the dissent and the government seem to assume.[21] There is no logical reason why Aguilar-Turcios’ admission to accessing pornographic Inter-net sites under the Article 92 charge would serve to limit the scope of his Internet use during the period at issue to the six instances of downloading images of child pornography charged under Article 134. Both charges reference the same computer serial number and the same date range. But those similarities alone do not lead inevitably to the conclusion that Aguilar-Turcios only used that particular computer six times over the course of the eight-and-a-half-month period alleged, and only to download images of child pornography. Indeed, the allegations in the charges make that conclusion unlikely: the Article 92 charge alleges that Aguilar-Turcios “obtain[ed] access to pornographic internet sites” “on divers occasions,” while the Article 134 charge alleges more specifically that Aguilar-Turcios possessed child pornography images “on six (6) occasions.”[22] Because the two charges are worded differently, we cannot conclude that the two convictions necessarily rested on the same facts.
Having established, on the basis of judicially noticeable documents, that AguilarTurcios’ Article 92 conviction “necessarily rested” only on the facts that (1) he used a government computer (2) to obtain access to pornographic Internet sites, the modified categorical approach directs us to deter-mine “whether these facts satisfy the elements of the generic offense.” Aguila-Montes, 655 F.3d at 940.
The generic federal offenses at issue here are 18 U.S.C. § 2252(a)(2) and (a)(4). Both qualify as “aggravated felonies” un *1040 der 8 U.S.C. § 1101(a)(43)(I). Section 2252(a)(2) criminalizes “knowingly ■ receiving], or distributing], any visual depiction ..., or knowingly reproducing] any visual depiction for distribution ..., if — (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct.” The version of § 2252(a)(4) that was in effect until 2008 similarly criminalized “knowingly possessing] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction ..., if — (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.”
Under the modified categorical approach as explained by Aguila-Montes, in order for Aguilar-Turcios to have been “convicted of’ one of these generic federal aggravated felonies, his Article 92 conviction must necessarily have rested on facts that satisfy the following elements: (1) knowingly receiving, distributing, reproducing for distribution, or possessing visual depictions of (2) a minor (3) engaging in sexually explicit conduct. A comparison of the necessary facts of Aguilar-Turcios’ Article 92 conviction and the elements of these two federal offenses illustrates that the facts do not satisfy the elements.
(1) Receiving, distributing, reproducing, possessing visual depictions: Aguilar-Turcios’ Article 92 conviction, including the Stipulation of Fact, shows only that he “obtain[ed] access to” pornographic Internet sites. The MJ clearly described the conduct charged under Article 92 as “visiting” or “going to ... pornographic internet sites.” The act of accessing, visiting, or going to an Internet site is not the equivalent of possessing or receiving a visual depiction.[23] In fact, § 2252(a)(4) was amended in 2008 to criminalize additionally the action of someone who “knowingly accesses with intent to view” child pornography, underscoring that possession is distinct from both accessing and viewing.[24] Additionally, there is no suggestion that Aguilar-Turcios distributed or reproduced any visual depictions. Therefore, AguilarTurcios’ conviction for obtaining access to pornographic Internet sites does not equate to any of the acts specified in § 2252(a)(2) or (a)(4).
Moreover, a pornographic Internet site, as the MJ defined pornography, does not necessarily contain any visual depictions. The MJ described pornography as “writings, pictures, etc., that are intended primarily to arouse sexual desire,” a very broad definition. There is nothing in the *1041 MJ’s definition of pornography that would limit Aguilar-Turcios’ admission to the accessing of images or pictures only.
(2) Minor: The facts necessary to Aguilar-Turcios’ Article 92 conviction do not mention minors.
(3) Engaging in sexually explicit conduct: Again, the facts necessary to Aguilar-Turcios’ Article 92 conviction do not mention this phrase or even incorporate the concept. Aguilar-Turcios pleaded guilty and admitted to accessing pornographic Internet sites on his government computer, as the MJ defined pornography at his court martial. That is all that he admitted to for the purposes of Article 92, and those are the only facts necessary to support his conviction.
Even if Aguilar-Turcios’ Article 92 conviction was somehow understood to encompass the phrase “engaging in sexually explicit conduct,” we could not hold that Aguilar-Turcios’ admission under Article 134 of possessing images of minors engaged in such conduct satisfies this element of § 2252(a)(2) and (a)(4) because the definition of “sexually explicit conduct” offered by the MJ does not correspond to the federal definition. The MJ defined “sexually explicit conduct” during the plea colloquy with Aguilar-Turcios as “conduct that is plainly or clearly involving sexually [sic] activity; the organs of sex; or the instincts, drives, or behavior associated with sexual activity.” For the purposes of § 2252(a)(2) and (a)(4), however, federal law defines “sexually explicit conduct” as “actual or simulated — (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.” 18 U.S.C. § 2256(2)(A); see also United States v. Adams, 343 F.3d 1024, 1034 (9th Cir.2003).
Aguilar-Turcios’ guilty plea to the Article 134 charge of possessing images of minors involved in sexually explicit conduct, as the MJ defined the term, could therefore have referred only to images of minors involved in conduct plainly or clearly involving the instincts or drives associated with sexual activity. That would not satisfy the “sexually explicit conduct” element of § 2252(a)(2) or (a)(4) as that term is defined by federal law, because an image might depict minors engaging in conduct involving the instincts or drives associated with sexual activity without depicting actual or simulated sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or a lascivious exhibition of their genitals or pubic areas — for example, an image of minors kissing would satisfy the MJ’s definition, while falling far short of the federal definition.[25] Aguilar-Turcios’ conviction under Article 134 did not necessarily rest on facts satisfying the federal definition of “sexually explicit conduct.”
Aguilar-Turcios’ Article 92 conviction does not necessarily rest on facts satisfying the elements of either § 2252(a)(2) or (a)(4). It is possible that his separate conviction under Article 134 would satisfy those elements — although doubtful, given the differing definitions of “sexually explicit conduct” — but the government did not appeal the IJ’s ruling that Article 134 could not serve as a basis for removal. The government must accept the consequences of its litigation strategies, as must any defendant.
In conclusion, Aguilar-Turcios’ Article 92 conviction was not an aggravated felony *1042 under the modified categorical approach and he is therefore not removable.
IV.
Because we conclude that Aguilar-Turcios’ UCMJ Article 92 conviction is not an aggravated felony, we have jurisdiction over this case, and we grant the petition for review and remand to the BIA with instructions for the agency to vacate the removal order against the petitioner.
GRANTED and REMANDED.

. Section 2252(a)(2) makes it a felony to "knowingly receive!], or distribute!], any visual depiction ..., or knowingly reproduce! ] any visual depiction for distribution ..., if— (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct.”

. The version of 18 U.S.C. § 2252(a)(4)(A) that was in effect until 2008 made it a felony to "knowingly possess!] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction .. ., if — (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.”

. Section 1101 (a)(43)(I) defines "aggravated felony" as "an offense described in section 2251, 2251A, or 2252 of Title 18 (relating to child pornography).”

. The IJ also commented that "clearly, he was convicted of conduct which is punishable under 18 U.S.C. [§ ] 2252.”

. The IJ's oral decision does not address the fact that the phrase "minor engaging in sexually explicit conduct” from § 2252(a)(2) and (a)(4) only appears in the Article 134 charge, not the Article 92 charge.

. While Aguilar-Turcios’ appeal was pending before this court, and an order was in place staying his removal, the government mistakenly removed Aguilar-Turcios to Honduras. Although his whereabouts were unknown as of the date of publication of our initial opinion in this case, his counsel has since been in contact with him via e-mail.

. We originally held that Aguilar-Turcios’ Article 92 conviction is not categorically an aggravated felony. On rehearing, the parties do not challenge that determination. Therefore, we limit our discussion to the modified categorical approach.

. Aguilar-Turcios argues that Aguila-Montes should be applied prospectively only, because it “represents a clean break from past precedent, and because of the reliance interests of aliens pleading guilty prior to it.” AguilarTurcios’ argument is unconvincing. We recently held that Aguila-Montes applies retroactively whether or not a petitioner had a reliance interest on Navarro-Lopez, the case that Aguila-Montes overruled. Flores-Lopez v. Holder, 685 F.3d 857, 866 n. 3 (9th Cir. 2012); Robles-Urrea v. Holder, 678 F.3d 702, 712 n. 9 (9th Cir.2012).
In Robles-Urrea, we held that Aguila-Montes applies retroactively where a noncitizen’s conviction became final prior to our 2007 decision in Navarro-Lopez, because he could not have relied on the missing element rule when he pleaded guilty. 678 F.3d at 712 n. 9. Similarly, Aguilar-Turcios pleaded guilty and his conviction became final in 2003, long before our Navarro-Lopez decision.
In Flores-Lopez, we held that Aguila-Montes applies retroactively even where a noncitizen may have relied on the Navarro-Lopez rule. 685 F.3d at 866 n. 3. This is because Aguila-Montes "eliminated the ‘missing element’ rule without indicating whether the rule would apply prospectively only. Therefore, the 'default principle' applies and the rule should apply to all cases currently pending before the Courts....” Id.
Aguila-Montes therefore applies retroactively to all cases pending before this court, including this one.

.We have found no other case from our circuit or our sister circuits discussing the application of the categorical and modified categorical approaches to convictions under the UCMJ, although clearly the federal government does rely on UCMJ convictions to remove noncitizens. See United States v. Denedo, 556 U.S. 904, 907-08, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009). In light of our disposition of this case, we assume without deciding that a conviction under the UCMJ may provide a proper basis for the government to initiate removal proceedings against a lawful permanent resident alien, and that we may look not only to the UCMJ but to the elements of a lawful general order like that at issue in this case when applying the modified categorical approach.

. We have held that documents of "equal reliability,” such as a state court's minute order, may also be considered. United States v. Snellenberger, 548 F.3d 699, 701-02 (9th Cir.2008) (en banc).

. The dissent also argues in favor of a more “flexible” approach in cases “where the Shepard documents leave no doubt as to what occurred.” Dissent at 1053 n. 12. Again, what occurred is not the focus of our inquiry under the categorical or modified categorical approach. Instead, we focus only on the offense of which the defendant was convicted. See, e.g., Kawashima, 132 S.Ct. at 1172; Carachuri-Rosendo, 130 S.Ct. at 2589; Aguila-Montes, 655 F.3d at 928.

. Moreover, before the Supreme Court decision in Taylor, executive branch agencies and the federal courts applied a pre-Taylor version of the categorical approach to determine if a non-citizen’s prior conviction would have immigration consequences. See Alina Das, The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law, 86 N.Y.U. L.Rev. 1669, 1688-1702 (2011).

. The dissent’s citation of our final opinion in the long-running case of Kawashima v. Holder is equally unhelpful. See Dissent at 1051-52. Our statement in that opinion that "the BIA is not limited to only those documents which a court applying the modified categorical approach may review," addressed only the "circumstance-specific” inquiry mandated by Nijhawan into the second requirement of 8 U.S.C. § 1101(a)(43)(M)(i), that "the loss to the victim or victims exceeds $10,000.” Kawashima v. Holder, 615 F.3d 1043, 1056 (9th Cir.2010), aff'd -U.S.-, 132 S.Ct. 1166, 182 L.Ed.2d 1 (2012). It was not a general statement, much less a "holding,” Dissent at 1051-52, applicable to all immigration cases.

. The dissent argues that by failing to consider Aguilar-Tureios’ factual admissions in connection with his plea of guilty to the Article 134 charge, we have effectively resurrected the "missing element rule” from Navarro-Lopez and undermined the holding in Aguila-Montes and the modified categorical approach in general. See Dissent at 1046-49. Respectfully, we fail to understand this concern. Only one of Aguilar-Tureios' UCMJ convictions is at issue on appeal. The Shepard documents reveal that the government’s only "theory of the case” for that conviction was that Aguilar-Tureios used a government computer to obtain access to pornographic Internet sites, charges which Aguilar-Tureios admitted in his plea colloquy. There is no *1035 other explicit theory behind the Article 92 conviction, and we decline to invent one. We therefore apply the modified categorical approach as explained by Aguila-Montes and restrict our analysis to the limited universe of Shepard documents that the approach permits us to consult. It is the dissent’s approach that is not sanctioned by either Aguila-Montes or Shepard.

."The elements of an Article 92, UCMJ, violation for failure to obey a lawful general order or regulation are: (a) a certain lawful general order or regulation was in effect; (b) the accused had a duly to obey that order or regulation; and (c) the accused violated or failed to obey the order or regulation.” United States v. Pope, 63 MJ. 68, 71-72 (C.A.A.F. 2006). During the plea colloquy, the MJ informed Aguilar-Turcios that the first two elements of the offense were (1) that Directive 5500.7-R § 2-301 was a lawful general regulation that was in effect, and (2) that AguilarTurcios had a duty to obey it. In response, Aguilar-Turcios conceded that these two preliminary elements were met.

. Here, the Stipulation of Fact was explicitly incorporated into the Memorandum of Pretrial Agreement, and is therefore a judicially noticeable document for purposes of applying the modified categorical approach in this case. See United States v. Almazan-Becerra, 537 F.3d 1094, 1097-98 (9th Cir.2008) (discussing United States v. Espinoza-Cano, 456 F.3d 1126, 1128-29, 1132-33 (9th Cir.2006); United States v. Hernandez-Hernandez, 431 F.3d 1212, 1215, 1218-20 (9th Cir.2005); Parrilla v. Gonzales, 414 F.3d 1038, 1043-44 (9th Cir.2005)).

. The dissent's frequent references to pieces of evidence admitted at the sentencing phase of Aguilar-Turcios' court martial, including photographs and a sworn statement signed by Aguilar-Turcios, are irrelevant to our application of the modified categorical approach, as they are not "included in the 'narrow, specified set of documents that are part of the record of conviction,' ” that may be considered as part of the modified categorical approach. See, e.g., Perez-Mejia, 663 F.3d at 410 (quoting S-Yong, 600 F.3d at 1035-36).

. The standard under the UCMJ requires the MJ to " 'determin[e] whether there is an adequate basis in law and fact to support the plea *1037 before accepting it.' ” United States v. Jones, 69 M.J. 294, 299 (C.A.A.F.2011) (quoting United States v. Inabinette, 66 M.J. 320, 321-22 (C.A.A.F.2008)). The UCMJ requires that a defendant admit his guilt and articulate the facts that objectively establish his guilt. Id. An MJ may consider a stipulation of facts and the accused's responses on the record in making that determination. Id.

. The charge sheet alleged that AguilarTurcios violated Article 134 as follows:
In that Lance Corporal Rigoberto Aguilarturcios [sic], U.S. Marine Corps, on active duty, did, ... on six (6) occasions, from on or about 1 November 2007, to on or about 18 July 2002, on a government computer hard drive, Fujitsu MPB3032AT (HD), serial number 03065335 (3.24 gb), wrongfully and knowingly possess visual depictions of minors engaging in sexually explicit conduct. ...

. The dissent's conclusion that the MJ “must have found Aguilar-Turcios guilty of an Article 92 violation based on his viewing of child pornography’’ relies in part on a sworn statement from Aguilar-Turcios that was admitted only at the sentencing phase of his court-martial and which we are not permitted to consult when applying the modified categorical approach. Dissent at 1046. The dissent justifies its references to this non-Shepard document by arguing that, under the modified categorical approach, we may consider factual stipulations. Dissent at 1046-47 n. 3. We do not dispute that under the modified categorical approach factual stipulations may be relevant Shepard documents, and indeed we consider and discuss the Stipulation of Fact between Aguilar-Turcios and the prosecution. See supra at 1035-36. The Stipulation of Fact, which was mentioned explicitly in the Memorandum of Pretrial Agreement, is distinct from Aguilar-Turcios’ sworn statement that he signed during his interrogation by investigating officers. The sworn statement, offered by the prosecutor at the sentencing phase of the court martial, does not qualify on its own as a Shepard document, see Shepard, 544 U.S. at 16, 125 S.Ct. 1254; Aguila-Montes, 655 F.3d at 921, and is not mentioned in any of the judicially noticeable documents in this case. See Almazan-Becerra, 537 F.3d at 1097-98.

. The government argues that "[t]he conclusion is thus unavoidable that Aguilar’s admission to viewing ‘pornographic internet sites' [in the Article 92 charge] on the same computer, on the same dates [as in the Article 134 charge], refers to the child pornography.” The dissent makes a similar argument: "Aguilar-Turcios’ admission to viewing 'pornographic internet sites' on the same computer, on the same dates [as in the Article 134 charge], undoubtedly refers to the child pornography.” Dissent at 1046. Although the Article 134 charge is irrelevant here, as the government did not appeal the IJ’s adverse ruling on that conviction, we address this argument because the dissent and government stress it to such a degree.

. The dissent is correct that “divers” could refer to six, but it could also refer to any other number greater than one. Dissent at 1049 n. 6. " ‘When members find an accused guilty of an "on divers occasions” specification, they need only determine that the accused committed two acts that satisfied the elements of the crime as charged — without specifying the acts, or how many acts, upon which the conviction was based.' ” United States v. Jones, 66 M.J. 704, 708 (A.F.Ct.Crim.App.2008) (quoting United States v. Rodriguez, 66 M.J. 201, 203 (C.A.A.F.2008)). And while "[s]ix occasions would easily fall within th[e] definition [of ‘divers’],” so would two occasions, or twenty, or one hundred. Dissent at 1049 n. 6. We cannot know the number of occasions to which the government was referring when it used the term “on divers occasions,” but we easily conclude that we cannot read "divers” as necessarily referring to “six.”

. It is possible to "possess” a visual depiction by visiting an Internet site if the image from the site is saved in a cache file and there is some evidence that the defendant has "knowledge of and access to the files.” United States v. Flyer, 633 F.3d 911, 919 (9th Cir.2011). Nothing in the Shepard documents in this case establishes that Aguilar-Turcios had knowledge of and access to whatever images were saved in the cache file on the computer that he used. See United States v. Kuchinski, 469 F.3d 853, 863 (9th Cir.2006) ("Where a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images. To do so turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control.”). The dissent argues that Aguilar-Turcios "possessed” visual depictions by downloading images from the Internet to his computer, but only refers to factual stipulations relating to the Article 134 charge, which are irrelevant here.

. See Enhancing the Effective Prosecution of Child Pornography Act of 2007, Pub.L. No. 110-358, § 203, 122 Stat. 4001.

. The dissent objects to our reasoning, Dissent at 1050-52, but again relies on evidence from the administrative record that is not with the limited universe of Shepard documents that we are permitted to consult when applying the modified categorical approach.