**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARLOS ALBERTO FLORES-LOPEZ,
AKA Carlos Alberto Flores, AKA
Carlos Flores-Lopez,
*Petitioner,*

v.

ERIC H. HOLDER Jr., United States
Attorney General,
*Respondent.*

No. 08-75140

Agency No.
A43-738-693

OPINION

On Petition for Review of a Decision of the
Board of Immigration Appeals

Argued and Submitted
February 10, 2012—Pasadena, California

Filed July 9, 2012

Before: Kim McLane Wardlaw and Consuelo M. Callahan,
Circuit Judges, and Ricardo S. Martinez, District Judge.*

Opinion by Judge Martinez

---

*The Honorable Ricardo S. Martinez, U.S. District Judge for the Western District of Washington, sitting by designation.

## COUNSEL

Holly S. Cooper (argued), The Law Offices of Holly S. Cooper, Davis, California, for the petitioner.

Jane T. Schaffner (argued), Office of Immigration Litigation, Civil Division; Leslie McKay, Office of Immigration Litigation; Tony West, Assistant Attorney General, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

MARTINEZ, Districe Judge:

Carlos Alberto Flores-Lopez petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal from an immigration judge's decision finding that his conviction for resisting an executive officer in violation of section 69 of the California Penal Code ("CPC") is a categorical crime of violence, rendering him removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony. We have jurisdiction under 8 U.S.C. 1252(a)(2)(D), we grant the petition for review, and we remand to the BIA for proceedings consistent with this opinion.

I

Flores-Lopez was born in El Salvador and was admitted to the United States as a legal permanent resident in 1992 on or around his eleventh birthday. In 2006, he pled guilty to resisting an executive officer in violation of CPC § 69 and was sentenced to one year and four months of imprisonment.

The procedural history of Flores-Lopez's removal proceedings is somewhat convoluted. On February 6, 2007, the Immigration and Naturalization Service initiated removal proceedings against Flores-Lopez by filing a Notice to Appear. The Notice charged Flores-Lopez with removability under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of a crime of violence aggravated felony.

Flores-Lopez first appeared before the immigration judge ("IJ") on March 13, 2007. His case was repeatedly postponed until October 4, 2007, when a hearing was scheduled on contested issues of removability and eligibility for cancellation of

removal. Two days before the hearing, Flores-Lopez submitted a motion to terminate removal proceedings, arguing that CPC § 69 was not a categorical crime of violence.

At the October 4, 2007 hearing, the Department of Homeland Security ("DHS") offered an abstract of judgment, a charging document (information), a motion for discovery, and a pre-conviction probation report as evidence that Flores-Lopez had been convicted of violating CPC § 69. Flores-Lopez responded that DHS had failed to meet its burden of proving that he was removable. Pursuant to his motion to terminate, Flores-Lopez argued that CPC § 69 was not a categorical crime of violence because the statute could be violated through the use of *de minimis* force and the government had failed to prove that Flores-Lopez had used more than *de minimis* force in committing the offense.

DHS requested that the case be postponed so that it could respond to Flores-Lopez's motion in writing and so that it could further prepare. The IJ denied the motion for a continuance and proceeded to consider removability. The IJ concluded that DHS had failed to sustain its burden of proving by clear and convincing evidence that Flores-Lopez had been convicted of a crime of violence and terminated the removal proceedings.

DHS filed a timely appeal to the BIA, arguing both that CPC § 69 was a crime of violence and that the IJ had erred by refusing to grant DHS a continuance to file a written response to petitioner's motion to terminate. DHS also contended that Flores-Lopez was removable on two additional grounds and requested that the BIA remand the matter to the IJ so that DHS could lodge an additional charge against Flores-Lopez.

The BIA remanded the proceedings to the IJ to allow DHS to lodge the additional charge. However, on Flores-Lopez's motion for reconsideration of the remand order, the BIA

vacated its decision. Instead, it sustained DHS's appeal of the IJ's decision and held that a conviction under CPC § 69 qualifies categorically as a crime of violence. On that basis, the BIA remanded the proceedings to the IJ to enter a new decision.

On September 11, 2008, on remand from the BIA, the IJ entered an order of removal against Flores-Lopez. Flores-Lopez appealed, arguing again that CPC § 69 is not a categorical a crime of violence, and the BIA summarily dismissed the appeal. This petition for review followed.

## II

"Whether an offense is an aggravated felony under 8 U.S.C. § 1101(a) is a legal question reviewed de novo." *Estrada-Rodriguez v. Mukasey*, 512 F.3d 517, 519 (9th Cir. 2007) (internal quotation omitted). We review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. *See Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir. 1998). Where the BIA issues its own decision but relies in part on the immigration judge's reasoning, we review both decisions. *See Alaelua v. I.N.S.*, 45 F.3d 1379, 1382-83 (9th Cir. 1995). Here, we review both the original BIA decision, overturning the IJ's cancellation of removal, and the second BIA decision, dismissing Flores-Lopez's appeal.

## III

### A

Flores-Lopez is removable if his California conviction for resisting an executive officer is an aggravated felony, specifically a crime of violence for which the term of imprisonment is at least one year. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii); 1101(a)(43)(F). To determine whether the California conviction is a "crime of violence," we apply the categorical approach set forth in *Taylor v. United States,* 495 U.S. 575

(1990), looking "only to the fact of conviction and the statutory definition of the prior offense."

**[1]** CPC § 69 provides:

> Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment.

The statute may be violated in two ways: (1) by attempting through threats or violence to deter or prevent an officer from performing a duty imposed by law; or (2) by resisting by force or violence an officer in the performance of his or her duty. *In re Manuel G.,* 941 P.2d 880, 885 (Cal. 1997). The two ways of violating CPC § 69 have been called the "attempting to deter" prong and the "actually resisting an officer" prong. *People v. Lopez,* 29 Cal. Rptr. 3d 586 (Cal. Ct. App. 2005). Because the proscribed conduct under CPC § 69 encompasses two categories of conduct, CPC § 69 is only a categorical crime of violence if both categories constitute crimes of violence.

## B

**[2]** An offense is a "crime of violence" if it is:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force

against the person or property of another may be used in the course of committing the offense.

8 U.S.C. § 16. The term crime of violence "suggests a category of violent, active crimes." *Leocal v. Ashcroft,* 543 U.S. 1, 11 (2004). "We have squarely held that the force necessary to constitute a crime of violence must actually be violent in nature." *Singh v. Ashcroft,* 386 F.3d 1228, 1233 (9th Cir. 2004) (citing *United States v. Ceron-Sanchez,* 222 F.3d 1169, 1172 (9th Cir. 2000)) (internal quotation omitted). Specifically, the "physical force" requirement of § 16 demands a greater degree of force than the mere "offensive touching" necessary to sustain a conviction of battery. *See Ortega-Mendez v. Gonzalez,* 450 F.3d 1010, 1017 (9th Cir. 2006).

Petitioner argues that a conviction under CPC § 69 is not a crime of violence because it requires only the use of *de minimis* force, as opposed to the "physical force" necessary to constitute a crime of violence. We agree. The language of CPC § 69 provides that in order to convict a person under the statute, the state must prove that the person used or threatened to use "violence" (for a conviction under the "attempting to deter" prong) or that he or she used "force or violence" (for a conviction under the "actually resisting" prong). To determine whether the words "violence" and "force" constitute the type of "physical force" necessary for an offense to be a crime of violence, we consider not only the language of the statute but also how that statute is defined in judicial opinions. *Ortega-Mendez,* 450 F.3d at 1016 (citing *United States v. Bonat,* 106 F.3d 1472, 1475-76 (9th Cir. 1997)).

**[3]** Here, the use note to the CPC § 69 model jury instructions points to the definition of "force or violence" as used in the law of *battery*.[1] *See* CALJIC 7.50. The battery definition provides that " 'force' and 'violence' are synonymous and

---

[1]The use note states: " 'Force or violence,' as used in the law of battery, is defined at CALJIC 16.141." CALJIC 7.50.

mean any [unlawful] application of physical force against the person of another, even though it causes no pain or bodily harm or leaves no mark and even though only the feelings of such person are injured by the act."[2] CALJIC 16.141. This definition is precisely the definition that we considered in *Ortega-Mendez*. 450 F.3d at 1017 (analyzing whether an offense under CPC § 242, California's battery statute, was a crime of violence). There, we held that the instruction comports with the case law for battery and that such conduct, "involving mere offensive touching[,] does not rise to the level of a 'crime of violence' within the meaning of 8 U.S.C. § 16(a)." *Id.*

**[4]** Not only does the use note to the instruction for CPC § 69 refer to the battery definition of "force or violence," but under California law "when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law." *People v. McKay*, 27 Cal.4th 601, 621, 622 (2002). Without more, we must assume that the term "force or violence" is given the same meaning in CPC § 69 as it is given in CPC § 242, California's battery statute. Since

---

[2]The full text reads:

As used in the foregoing instruction, the words "force" and "violence" are synonymous and mean any [unlawful] application of physical force against the person of another, even though it causes no pain or bodily harm or leaves no mark and even though only the feelings of such person are injured by the act. The slightest [unlawful] touching, if done in an insolent, rude, or an angry manner, is sufficient.

It is not necessary that the touching be done in actual anger or with actual malice; it is sufficient if it was unwarranted and unjustifiable.

The touching essential to a battery may be a touching of the person, of the person's clothing, or of something attached to or closely connected with the person.

CALJIC 16.141.

California's definition of "force or violence" as used in CPC § 69 is broader than the term "physical force" in 8 U.S.C. § 16, an offense under CPC § 69 is not a crime of violence under 8 U.S.C. § 16(a).

C

**[5]** We now turn to whether an offense under CPC § 69 satisfies the requirements for a crime of violence under the residual clause at 8 U.S.C. § 16(b). Even if a state offense does not involve the use, attempted use, or threatened use of "physical force," the offense may still qualify as a crime of violence if it "is a felony and . . . by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 8 U.S.C. § 16(b). Neither party disputes that § 69 is a felony. Therefore, the dispositive issue is whether all of the conduct proscribed by § 69 creates a substantial risk that physical force against the person or property of another may be used.

The Supreme Court has held that under both clauses of section 16, a crime of violence requires a "higher degree of intent than negligent or merely accidental conduct" and only "covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal*, 543 U.S. at 9. Therefore, "in order to be a predicate offense under either § 16(a) or (b), the underlying offense must require proof of an *intentional* use of force or a substantial risk that force will be *intentionally* used during its commission." *United States v. Gomez-Leon*, 545 F.3d 777, 787 (9th Cir. 2008) (emphasis in original). Crimes involving the reckless use of force do not qualify under 8 U.S.C. § 16 as crimes of violence. *Fernandez-Ruiz v. Gonzales,* 466 F.3d 1121, 1130 (9th Cir. 2006).

We addressed whether a general intent crime could constitute a "crime of violence" under 8 U.S.C. §16(b) in *Covarru-*

*bias Teposte v. Holder*, 632 F.3d 1049 (9th Cir. 2011). There, we analyzed CPC § 246, which prohibits discharging a firearm into an inhabited building. Because CPC § 246 is a general intent crime, we held that it could not be a categorical crime of violence under 8 U.S.C. § 16:

> Given the elements of that statute set by California judicial decisions, we can gather with certainty only that Covarrubias intentionally discharged a gun with reckless disregard as to whether the bullet would hit an inhabited vehicle or dwelling. This creates a risk of injury to other people and damage to property. But it does not involve a substantial risk of using force with intent against persons or property . . . [T]his subjective awareness of possible injury is not the same as the intentional use of physical force against the person of another.

*Id.* at 1054.

While the California Supreme Court has yet to address whether the "actually resisting an officer" prong of § 69 is a general or specific intent crime, "no case has affirmatively stated that the second clause of section 69 describes an offense requiring specific intent." *People v. Rasmussen*, 117 Cal. Rptr. 3d 588, 595 (Cal. Ct. App. 2010). The appellate courts have uniformly held, "[t]he definition of the resistance offense in section 69 describes only the act of resisting an executive officer and does not require an intent to do a further act or achieve a future consequence." *Id.* at 594; *see also People v. Roberts,* 182 Cal. Rptr. 757, 761 (Cal. App. Dep't. Super. Ct. 1982) ("[T]he second portion of section 69 consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence and it is *therefore a general intent crime*") (emphasis added) (quotation marks and internal citations omitted).

**[6]** Since the "actually resisting" prong of CPC § 69 is a general intent crime, we can be certain only that Flores-Lopez

intentionally used at least *de minimis* force in resisting an officer with reckless disregard as to whether doing so would result in the use of non-*de minimis* force against the person or property of another. The idea that resisting an officer will inevitably lead to the use of violent, physical force is "too speculative to support a conclusion that CPC § [69] is categorically a crime of violence." *Covarrubias*, 632 F.3d at 1055. Because a conviction under CPC § 69 does not require proof of the requisite level of intent to constitute a crime of violence under 8 U.S.C. § 16(b), an offense under section 69 is not a categorical crime of violence.

The BIA cites *Estrada-Rodriguez v. Mukasey*, 512 F.3d 517 (9th Cir. 2007), for the proposition that resisting a police officer, by its nature, creates a substantial risk that physical force will be used. *Estrada-Rodriguez* involved Arizona's resisting arrest statute, which prohibits resisting arrest by (1) "[u]sing or threatening to use physical force against the peace officer or another;" or (2) "[u]sing any other means creating a substantial risk of causing physical injury to the peace officer or another." Ariz. Rev. Stat. § 13-2508. There are two important distinctions between CPC § 69 and the Arizona resisting arrest statute that distinguish this case from *Estrada-Rodriguez.*

First, CPC § 69 does not contain the language of Ariz. Rev. Stat. § 13-2508 prohibiting the use of "any other means creating a substantial risk of causing physical injury to the peace officer or another." By its plain language, this portion of the Arizona statute tracks more closely the language of § 16(b) (an offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used") than does the language of CPC § 69, which proscribes resistance through the use of force or violence.

Second, and most importantly, in *Estrada,* we relied heavily on an Arizona case, *State v. Womack*, 174 Ariz. 108, 847 P.2d 609, 613 (Ariz. Ct. App. 1992), in which "an Arizona

appellate court decided that nonviolent flight from an attempted arrest did not constitute resisting arrest under § 13-2508(A)(2)." *Estrada-Rodriguez,* 512 F.3d at 521. There, we noted that " '[n]either [nonviolent] nonsubmission nor flight are covered' by resisting arrest statutes" in Arizona. *Id.* (citing *Womack,* 174 Ariz. at 612). Rather, "*[t]here must be actual opposition or resistance,* making *necessary*, under the circumstances, the use of force." *Id.* (citing *Womack,* 174 Ariz. at 613) (emphasis added). Thus, under the Arizona statute, all of the potential *de minimis* uses of force directed against an officer in resisting arrest, discussed above, are interpreted as exempt from the statute. Here, in contrast, there is no California case law that would support a similar interpretation of CPC § 69.

**[7]** Since CPC § 69 proscribes the use of *de minimis* force, and the "actually resisting prong" of CPC § 69 is a general intent crime and does not by its nature create a substantial risk that force will be used, the BIA erred in holding that an offense under CPC § 69 is a categorical crime of violence.

## IV

The only issue on appeal is whether CPC § 69 is a categorical crime of violence. We have held that it is not. This does not mean, however, that Flores-Lopez did not commit a crime of violence or that he is not removable. Under the modified categorical approach, a court may review enumerated documents within the record to determine whether a petitioner's plea " 'necessarily' rested on the fact identifying the [offense] as generic." *Shepard v. United States,* 544 U.S. 13, 21 (2005) (quoting *Taylor,* 495 U.S. at 602). The government argues that we should remand the case to the BIA to apply this second step of the analysis. We agree.

Generally, this Court does not remand a case to the BIA to apply the modified categorical approach "where only legal questions remain and these questions do not invoke the

Board's expertise; all relevant evidence regarding the conviction had been presented to the BIA in earlier proceedings; and the BIA had already once determined that the offense fell within the generic definition of the crime, even if only at the categorical stage." *Fregozo v. Holder*, 576 F.3d 1030, 1036 (9th Cir. 2009) (citing *Latu v. Mukasey*, 547 F.3d 1070, 1076 (9th Cir. 2008); *Ruiz-Vidal v. Gonzales,* 473 F.3d 1072, 1079-80 (9th Cir. 2007); *Fernandez-Ruiz,* 466 F.3d at 1133-35)). Here, as in *Fregozo*, the BIA has already once determined that the offense fell within the generic definition of the crime at the categorical stage. However, in contrast to *Fregozo,* it is unclear whether DHS had the opportunity to introduce all of the relevant evidence regarding petitioner's conviction in the proceedings below.

When this case was first before the IJ, the so-called "missing element rule" was still in effect. *See, e.g.*, *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1074 (9th Cir. 2007). Under this rule, "[w]hen the crime of conviction is missing an element of the generic crime altogether, we can never find that a jury was actually required to find all the elements of the generic crime." *Id.* at 1073 (internal quotation omitted); *see also Li v. Ashcroft,* 389 F.3d 892, 899-901 (9th Cir. 2004) (providing examples). Accordingly, a conviction under a state statute that was missing an element of the generic crime could never serve as a predicate offense for removal purposes. *Id.*

In *United States v. Aguila-Montes de Oca,* we overruled *Navarro-Lopez* and all subsequent cases to the extent they relied on the missing element rule. 655 F.3d 915 (9th Cir. 2011) (en banc). In its place, we directed courts to apply a "revised modified categorical approach" in all instances in which the offense of conviction is broader than the generic offense to "determine, in light of the facts in the judicially noticeable documents, (1) what facts the conviction necessarily rested on (that is, what facts the trier of fact was actually required to find); and (2) whether these facts satisfy the elements of the generic offense." *Id.*

*Aguila-Montes de Oca* was published during the interim between the BIA's decision on Flores-Lopez's removal and the date upon which this appeal was submitted for review.[3] *See Aguila-Montes de Oca,* 655 F.3d 915. Thus, when this matter was first before the IJ, had the IJ determined that CPC § 69 was not a categorical crime of violence because it did not require proof of the requisite level of force, the modified categorical approach would not have applied. The statute was missing an element of the generic offense. Since the modified categorical approach was inapplicable, the government had no reason to submit documentation relevant to the application of the modified categorical approach. As a result, there is reason to believe that the record of petitioner's conviction that is now before the Court is incomplete. With these considerations in mind, we consider the abrogation of *Navarro-Lopez* and the elimination of the missing element rule to be significant intervening changes in the controlling law, counseling in favor of remanding the matter to the BIA.

**[8]** We grant Flores-Lopez's petition. Because the record of Flores-Lopez's conviction may be incomplete, we remand

---

[3]Petitioner argues that *Aguila-Montes de Oca* should not be applied retroactively because aliens may have pled guilty to convictions under missing element statutes on reliance of the rule. This argument does not have merit. The "default principle is that a court's decisions apply retroactively to all cases still pending before the courts." *Nunez-Reyes v. Holder*, 646 F.3d 684, 690 (9th Cir. 2011). This Court recently elaborated on the narrow set of circumstances in which an appellate court may have the option under *Chevron Oil* to apply a rule prospectively: "(1) in a civil case; (2) when we announce a new rule of law, as distinct from applying a new rule that we or the Supreme Court previously announced; (3) and when the new rule does not concern our jurisdiction." *Nunez-Reyes*, 646 F.3d at 691. Here, *Aguila-Montes de Oca* eliminated the "missing element" rule without indicating whether the rule would apply prospectively only. Therefore, the "default principle" applies and the rule should apply to all cases currently pending before the Courts, including this one. We are not empowered to hold that the rule will only apply prospectively because the case now before us is not the case in which the missing element rule was eliminated. *Id.*

to the BIA to apply the modified categorical approach in the first instance.

GRANTED and REMANDED.